UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICKY ARNTSEN,                          )
                                        )
                Petitioner,             )      CASE NO.  C98-937-TSZ
                                        )
        v.                              )      REPORT AND
                                        )      RECOMMENDATION
TANA WOOD,                              )
                                        )
                Respondent.             )
_____)

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Ricky Arntsen ("Arntsen") is a state prisoner who is currently serving a 288 month sentence that resulted from his October, 1993 conviction in King County Superior Court for second degree murder.  He proceeds *pro se* in this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from this conviction.  After careful consideration of the voluminous record consisting of his trial, its direct appeals, three personal restraint petitions, a state-court evidentiary hearing and its successive appeals, I conclude that no evidentiary hearing in this court is required, and that this Court should DENY the Petitioner § 2254 petition and dismiss this action with prejudice.

//

//

REPORT AND RECOMMENDATION
Page - 1

## II.  FACTUAL BACKGROUND

The Washington Court of Appeals summarized the facts related to Arntsen's conviction as follows:

> On the afternoon of April 22, 1993, Seattle Police Officers responded to a call of shots fired at the Jefferson Apartments in Seattle.  The officers found Gregory Collier lying in a stairwell, bleeding heavily from several gunshot wounds to the torso.  Collier died of his wounds at the hospital.  An eyewitness provided a description of the shooter that closely resembled a man whom the officers had seen minutes earlier in front of the apartment building, and they broadcast the description of the suspect and the red Toyota he was in over the police radio.
>
> Two hours later, another Seattle Police officer who had earlier heard the description over the radio saw the red Toyota and followed it to the Embassy Suites hotel in Bellevue.  All of the occupants of the Toyota were related to Ricky Arntsen and the car was registered to Arntsen's mother.  After interrogating the car's occupants, detectives determined that another member of the Arntsen family, Ricky Arntsen, had not yet been seen nor interviewed.  Inconsistencies in Arntsen's relatives' stories made the detectives suspicious, and they returned to Seattle to obtain a photograph of Ricky Arntsen.
>
> The detectives obtained a five-year old booking photograph of Arntsen and assembled a photographic montage.  Officer Ferreira identified the photograph of Arntsen as the person he had seen in front of the apartments.  The detectives returned to the Jefferson Apartments and showed the photographic montage to two apartment tenants, who identified Arntsen as the shooter.  Based on these identifications and a description of the suspect by another tenant, the detectives returned to the Embassy Suites in an attempt to locate Ricky Arntsen.
>
> At the hotel, detectives discovered Arntsen asleep on the floor of the hotel room registered to the Arntsen family.  He identified himself as Maurice Grant, and denied knowing Ricky Arntsen's whereabouts.  Arntsen's true identity was discovered when he was fingerprinted.  He was charged by information with second degree felony murder for causing Gregory Collier's death while engaging in a second degree assault upon him.
>
> Before trial, the defense moved three times, unsuccessfully, to dismiss on the basis of discovery violations.  The defense also moved to suppress several witnesses' pre-trial identifications of the shooter, but requested that the court reserve ruling until after each witness had testified at trial.
>
> The jury found Arntsen guilty as charged.  The court denied a post-trial defense motion for a complete transcript of the trial proceedings for the purpose

of making a new trial motion, and denied the subsequent new trial motion. Arntsen was sentenced within the standard range[.]

Dkt. #18, Ex. 2 at 2-4.

## III.  PROCEDURAL HISTORY

A.    Direct Appeal and First PRP

Arntsen appealed his conviction to the Washington Court of Appeals, Division I ("Court of Appeals").  His attorney filed a brief in which he argued: (1) the trial court erred in failing to submit a "to convict" instruction to the jury; (2) ineffective assistance of counsel due to failure to conduct a complete pretrial suppression motion; (3) the trial court erred in denying the defense motion to dismiss due to the state's discovery violations and mismanagement of the case; (4) the trial court erred in denying the defense request for *in forma pauperis* preparation of a trial transcript for a new trial motion; and (5) prosecutorial misconduct in closing argument.  Dkt. #18, Ex. 3.  Arntsen also filed a *pro se* brief in which he argued ineffective assistance of counsel for: (a) failure to make timely objections, (b) failure to correct misstatement of facts by expert witness about potentially exculpatory evidence, (c) cross-examination of state witnesses without presenting inconsistent pretrial statements; and (d) lack of access to trial transcripts during motion for new trial  Dkt. #18, Ex. 6.  Additionally, he argued that the evidence did not prove guilt beyond a reasonable doubt, and there was prosecutorial misconduct in closing argument and in the state's mismanagement of the disclosure of discovery.  *Id.*

While this direct appeal was pending, Arntsen filed a personal restraint petition ("PRP") in which he argued: (1) his identification as the person who committed the crime could not be established with sufficient certainty to preclude a reasonable possibility of mistake; and (2) defense counsel was ineffective based on his failure to use inconsistent pretrial statements in cross-examination of witnesses. Dkt. #18, Ex. 8.  The Court of Appeals consolidated the PRP with his direct appeal and, in an unpublished opinion on February 3, 1997, the court affirmed

REPORT AND RECOMMENDATION
Page - 3

Arntsen's conviction with respect to his direct appeal and dismissed his PRP.  Dkt. #18, Ex. 2.

Arntsen's  motion for reconsideration was denied without comment.   (Dkt. #18, Ex. 14).

Next he filed a petition for review in the Washington State Supreme Court, arguing: (1) prosecutorial misconduct in closing argument; (2) ineffective assistance of counsel based on failure to conduct a complete pretrial suppression motion; and (3) ineffective assistance of counsel resulting from failure to thoroughly cross-examine the identification witnesses, failure to point out inconsistencies in witness testimony regarding the fingerprint analysis, and failure to object to prejudicial testimony by police witnesses.  Dkt. #18, Ex. 15.  On July 8, 1997, the state supreme court denied the petition for review without comment.  Dkt. #18, Ex. 16.  The Court of Appeals issued the Mandate on July 23, 1997.  Dkt. #18, Ex. 17.

B.    Second PRP

On January 28, 1998, Arntsen filed a second PRP presenting issues regarding ineffectiveness of trial and appellate counsel; suggestiveness of the identification procedure; and the trial court's denial of an evidentiary hearing after refusing a defense request for *in forma pauperis* trial transcripts, denying a new trial, and refusing to strike the identification by Tamara Walberg.  Dkt. #18, Ex. 18.  On March 11, 1998, the Court of Appeals issued an Order dismissing this PRP, rejecting some claims on the merits and finding that other claims were barred under RCW 10.73.140.  Dkt. #18, Ex. 19.

Arntsen then filed a petition for discretionary review in the state supreme court. Dkt. #18, Ex. 20.  On May 29, 1998, a Commissioner of the court denied the motion for discretionary review, concluding that all the issues raised in the second PRP either were or could have been raised in the first PRP, and that there have been no intervening changes in the law or other circumstances which would justify reconsidering any of his claims.  Dkt. #18, Ex. 21.   Arntsen

REPORT AND RECOMMENDATION
Page - 4

filed a motion to modify the ruling; however, the court denied the motion without comment on September 2, 1998.  Dkt. #18, Ex. 23.

C.    Federal Habeas Petition

On July 7, 1998, Arntsen filed a petition for writ of habeas corpus in this Court.  Dkt. #1. After Respondent's answer, Arntsen also filed a supplemental memorandum that presented an additional claim of "actual innocence." Dkt. #21 at 9-11.  In an Order dated January 20, 1999, this Court found that the petition was a "mixed" petition because Arntsen alleged both exhausted and unexhausted claims. Dkt. #28 at 8-9.  Because a mixed federal habeas petition must be dismissed by the district court, the Court directed Arntsen to either return to the state court to present his unexhausted "actual innocence" claim, or resubmit his federal habeas petition so that it included only exhausted claims.  *Id.* at 8-10.  In response, Arntsen filed a motion for reconsideration and/or clarification, asking the Court to hold his petition in abeyance while he returned to state court to present his unexhausted claim.  Dkt. #29.

On January 28, 1999, the Court issued an Order directing that Arntsen must amend his mixed petition to delete the unexhausted claims of actual innocence before the Court would have jurisdiction to hold his petition in abeyance. Dkt. #30.  After an initial unsuccessful attempt to properly amend the habeas petition, Arntsen filed a second amended habeas petition on March 23, 1999.  Dkt. #38.  On April 14, 1999, this Court ordered that the habeas petition be stayed and held in abeyance until Arntsen exhausted his actual innocence claim in state court.  Dkt. #40.

D.    Third PRP

On April 5, 1999, Arntsen filed a third PRP in the Court of Appeals, raising his "actual innocence" claim.  Dkt. #68, Ex. 39.  On May 5, 1999, the court issued an Order dismissing the PRP.  Dkt. #68, Ex. 40. He sought review in the state supreme court, which granted his motion for discretionary review and transferred the PRP to King County Superior Court to be

REPORT AND RECOMMENDATION
Page - 5

considered on its merits following an evidentiary hearing, pursuant to RAP 16.12.  Dkt. #68, Ex. 42.

The Hon. Ronald Kessler of the King County Superior Court conducted a 3-day hearing in which he heard testimony from Arntsen and his siblings Ronald, Kristina, and Kaunya Arntsen. Dkt. #68, Ex. 43-45.  The Court also viewed videotaped depositions by some of these witnesses and by others who did not testify at the hearing, including Arntsen's mother, Cynthia and brother, Reggie.  Dkt. #68, Ex. 43 at 118-119.  After the hearing, Judge Kessler dismissed the PRP,  after finding that Arntsen was the only credible witness and his family member were not credible.  Judge Kessler concluded that the evidence presented at the hearing could have been discovered by due diligence, and thus, did not meet the "newly discovered evidence" test.   Dkt. #68, Ex. 47.

Arntsen sought review of the superior court's findings of facts and conclusions of law in the Washington Court of Appeals.  Dkt. #68, Ex. 48.  In an unpublished opinion on February 11, 2002, the court affirmed the order dismissing the PRP. *Id.* at Ex. 51.  He next sought review in the state supreme court, which denied the petition for review without comment on September 4, 2002.  Dkt. #68, Ex. 53.  The Court of Appeals issued the Mandate on September 17, 2002.  *Id.* at Ex. 54.

E.    Return to Federal Proceedings

On September 10, 2002, this Court lifted the stay on Arntsen's federal habeas petition. Dkt. #56.  He then filed a motion for leave to amend and supplement his petition, which was granted by this Court.  (Dkt. #61).   Thereafter, Arntsen  filed a memorandum in support of his habeas petition (Dkt. #60), as well as a supplement to the petition (Dkt. #65)  Respondent filed

REPORT AND RECOMMENDATION
Page - 6

a Supplemental Answer and Memorandum of Authorities (Dkt. #67) and Arntsen filed a

response.  The briefing is now complete and this matter is ripe for review.

## IV.  GROUNDS FOR RELIEF

In a 146-page, single-spaced memorandum in support of his habeas petition, Arntsen

asserts the following six main grounds for relief:

> 1.   Petitioner can make the requisite showing of actual innocence to
>      have any claims that might otherwise be procedurally barred,
>      reviewed and decided on the merits by this Court.
>
> 2.   The prosecutor committed misconduct in a number of instances
>      throughout the trial.
>
> 3.   Improper witness testimony deprived Petitioner of a fair trial.
>
> 4.   The identification procedures utilized in this case were so
>      suggestive as to deprive Petitioner of a fair trial.
>
> 5.   Petitioner received ineffective assistance of counsel at trial.
>
> 6.   Petitioner received ineffective assistance of counsel on appeal.

Dkt. 60 at 30.  He  also asserts over thirty (30) subclaims in his arguments under these six

grounds.  *Id.* at 30-142.  This Court's discussion of Arntsen's subclaims refers to them as

enumerated in the listing on pages 6-8 of Respondent's Supplemental Answer and Memorandum.

(Dkt. #67).

## V.  DISCUSSION

A.   <u>"RELATION BACK" OF NEW CLAIMS</u>

Respondent first argues that most of the claims in Arntsen's 2002 amended habeas

petition (the "amended petition") are barred by the "relation back" rule of Fed. R. Civ. P.

15(c)(2), which provides that an amendment of a pleading relates back to the date of the original

pleading when "the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth or attempted to be set forth in the original pleading."

REPORT AND RECOMMENDATION
Page - 7

Respondent specifically contends that the following new claims do not relate back:

> 1)    Actual innocence claims five and twelve;
>
> 2)    All prosecutorial misconduct claims;
>
> 3)    All improper witness testimony claims;
>
> 4)    Ineffective assistance of counsel at trial: part of claim one, failure to suppress William Marshall's testimony under *Frye* rule; part of claim two, failure to object to O'Leary's, Traverso's, Kilgore's and Walberg's testimony; part of claim three, failure to cross-examine and impeach Lester, and claim five; and
>
> 5)    Ineffective assistance of counsel on appeal claims one, two, three, five and six.

Dkt. #67 at 14. Respondent relies on federal case law from other circuits in arguing that these claims are now time-barred because they relate to claims "separate in both time and type" from the claims Arntsen raised in his 1998 petition.

However, the Ninth Circuit has joined the Seventh Circuit in concluding that the proper "conduct, transaction, or occurrence" in a habeas context is the trial and conviction under attack. *Felix v. Mayle*, 379 F.3d 612, 615 (9th Cir. 2004) (citing *Ellzey v. United States*, 324 F.3d 521 (7th Cir. 2003)). In reaching this conclusion, the Ninth Circuit explicitly disagreed with the decisions of those circuits that deny relation back under Rule 15(c)(2) when a new claim rests on a theory or facts within a trial not raised in the original habeas petition. *Felix*, *Id.* at 615 (citing *United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002); *Davenport v. United States*, 217 F.3d 1341, 1344-45 (11th Cir. 2000); *United States v. Pittman*, 209 F.3d 314, 317-18 (4th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 337-38 (3rd Cir. 1999); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)).

Accordingly, I conclude that the new claims identified above relate back under Rule 15(c)(2) to Arntsen's 1998 habeas petition because they arose out of the same conduct, transaction, or occurrence set forth in that pleading – namely Arntsen's state trial and

REPORT AND RECOMMENDATION
Page - 8

conviction.  Therefore, the Court's preliminary review of all the claims in Arntsen's amended petition is governed by the exhaustion and procedural bar doctrines.

B.    EXHAUSTION AND PROCEDURAL BAR

It is well established that state remedies must first be exhausted on all issues raised in a federal habeas corpus petition.  *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b), (c).  Exhaustion must be shown either by providing the highest state court with the opportunity to rule on the merits of the claim or by showing that no state remedy remains available.  *See Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).  The exhaustion requirement is a matter of comity, intended to afford the state courts "the first opportunity to remedy a constitutional violation."  *Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981).  A federal habeas petitioner must provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing on his constitutional claim.  *Picard v. Connor*, 404 U.S. 270 (1971); *Anderson v. Harless*, 459 U.S. 4 (1982).

It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  *Anderson*, 459 U.S. at 6.  The habeas petitioner must have fairly presented to the state courts the substance of his federal habeas corpus claims.  *Id.*  If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in the state court.  *Johnson*, 88 F.3d at 830.

Arntsen argues that he has fully and fairly exhausted his state remedies.  However, Respondent contends that this Court previously determined that all, except one, of Arntsen's claims were technically exhausted but procedurally defaulted because they are barred under an independent and adequate state law.  Respondent argues that under the "law of the case" doctrine, this Court should conclude that Arntsen's claims are defaulted despite the new factual

REPORT AND RECOMMENDATION
Page - 9

scenarios/amendments added in his amended habeas petition.

1.   Applicability of the Law of the Case Doctrine

Under the "law of the case" doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.) (*cert. denied* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993)). For the doctrine to apply, the issue in question must have been "decided explicitly or by necessary implication in [the] previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (quoting *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438 441 (9th Cir. 1982)). Application of the doctrine is discretionary. *Id.* A court may exercise its discretion to depart from the law of the case where one of the following exceptions applies: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result. *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 469 (9th Cir. 2000). Otherwise, failure to apply the doctrine of the law of the case constitutes an abuse of discretion. *Thomas*, 983 F.2d at 155.

In an Order issued on January 20, 1999, this Court explicitly decided whether the six grounds for relief presented in Arntsen's 1998 habeas petition had been properly exhausted. Dkt. #28. The Court determined that "Petitioner has only 'fully and fairly' exhausted the claim that his trial counsel provided ineffective assistance in violation of the Sixth Amendment by bungling all of the identification issues in this case." *Id.* at 5. The Court further determined that Arntsen's due process claim[1] was not presented as a ground for review on direct appeal, and the

---

[1] Arntsen alleged that the identification procedures utilized in this case were so suggestive as to deprive him of his Due Process rights. Dkt. #2 at 15-19.

REPORT AND RECOMMENDATION
Page - 10

state courts declined to review the claim on independent and adequate grounds for procedural

reasons when it was raised in his second PRP. *Id.* at 6. Likewise, the Court determined that

Arntsen's remaining claims of ineffective assistance of counsel[2] had not been adequately

presented to the state courts on direct appeal, and several of the claims were also denied review

on independent and adequate state grounds for procedural reasons in his second PRP. This

Court ultimately concluded that all the remaining grounds in Arntsen's 1998 habeas petition are

now unexhausted and procedurally barred under Washington state law pursuant to RCW

10.73.140 and 10.73.090.[3] *Id.*

Arntsen has not demonstrated that any of the requisite exceptions to the law of the case

---

[2]Arntsen presented three additional claims of ineffective assistance of trial counsel based on failure to: 1) conduct proper investigation and present available exculpatory testimony; 2) obtain an expert on eye-witness identification; and 3) make timely objections to improper trial testimony and arguments by the prosecutor. Dkt. #2 at 25-31. He also alleged ineffective assistance of appellate counsel in violation of the Fourteenth Amendment for failure to raise several issues that were apparent in the record. *Id.* at 31-35.

[3]The Court's conclusions on exhaustion of the six main grounds implicitly applies to their related subclaims. Under his due process claim, Arntsen argued the following subclaims: a) the photo montage was inherently biased; b) the witnesses (Fierra, Traverso, Spivey, Walberg, Lester, Kilgore, Webber) provided wildly varying descriptions of the assailant; c) it is questionable whether the witnesses (Spivey and Walberg) were in a condition to pay close attention to the events; d) the witnesses' varied descriptions and conflicting accounts militate against the certainty of their identifications; and e) the in-court identification by Walberg was troubling because she saw Petitioner in handcuffs and under heavy guard just prior to her testimony. Dkt. #2 at 15-19. Under the unexhausted ineffective assistance of trial counsel claims, he argued the following: a) trial counsel did not present sworn statements of three witnesses from the Arntsen family who could have demonstrated that Arntsen was not in Seattle at the time of the shooting; b) trial counsel never allowed the court to consider whether an expert witnesses such as Dr. Reinitz might have assisted the trier of fact to understand the memory issues associated with eyewitness identifications and testimony; and c) trial counsel failed to make a timely objection to the in-court identification by Tammy Walberg and to improper comments by the prosecutor in closing argument. *Id.* at 19-31. Additionally, under his unexhausted ineffective assistance of appellate counsel claim, Arntsen argued that counsel: a) failed to raise any claim regarding the suggestive out-of-court and in-court identifications, and b) failed to apprise him of the consequences of filing his first PRP. *Id.* at 33-36.

REPORT AND RECOMMENDATION
Page - 11

doctrine exist in this case.  Absent any exceptions, I find that the doctrine is applicable here, and it precludes the Court's reconsideration of its prior determination on the exhaustion issue for these claims.[4]  Accordingly, only one of the six main claims in Arntsen's 1998 habeas petition was properly exhausted.

2.    Remaining Claims

The record shows that Artnsen has fairly exhausted actual innocence claims one, fourteen, and fifteen because he presented them as federal claims in his third PRP to the state court of appeals and in his petition for discretionary review to the state supreme court.  *See* Dkt. #68, Ex. 39 & 41.  But Respondent's argument under the law of the case doctrine does not address the remaining claims in Artntsen's amended petition, which consist of the "new claims" discussed in section "A" above. Of those claims, Arntsen attempted to raise only the following claims in the state courts: 1) prosecutorial misconduct, claim four (prosecutor making improper closing arguments by vouching for State's witness, appealing to the jury, and offering his opinion); and 2) ineffective assistance of trial counsel, claims two and three (failure to object to witness testimony and failure to effectively cross-examine and impeach state witness Lester).

However, a claim is not fairly exhausted if it is submitted to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances.  *See e.g., Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Roettgen v. Copeland*, 33 F.3d 36-39 (9th Cir. 1994).   Thus, Arntsen did not fairly exhaust prosecutorial misconduct claim four because when he raised this claim in his petition for review to the state supreme court, he cited only state

_____

[4]Arntsen attempts to re-argue subclaims from his1998 habeas petition in his amended petition.  However, the following claims in his amended petition are essentially the same as the subclaims identified in note 3 above: Actual Innocence claims 2-4, 6-11, and 13; the Suggestive Identification Procedure claim; Ineffective Assistance of Trial Counsel claims 2 and 4; and Ineffective Assistance of Appeals Counsel claim 4.  *See* Respondent's Supplemental Answer and Memorandum, Dkt. #67 at 6-8.

REPORT AND RECOMMENDATION
Page - 12

court rules and cases, and he failed to mention any provision of the federal constitution. *See* Dkt. #18, Ex. 15 at 13-16. Additionally, the petition for review simply stated that the court should accept review of certain ineffective assistance of trial counsel claims (including claims two and three supra.) that were presented in Arntsen's pro se supplemental brief, PRP, and motion for reconsideration. *See* Dkt. #18, Ex. 15 at 19. Again, however, the petition failed to set out the substantive facts of a federal constitutional claim or cite any federal case law in support of the identified ineffective assistance of trial counsel claims. Therefore, I conclude that Arntsen failed to fairly exhaust ineffective assistance of counsel claims two and three in the state courts.

Furthermore, in light of state statutes RCW 10.73.090 (establishing a one-year statute of limitations for collateral challenges) and 10.73.140 (barring the court of appeals from considering a successive or identical petitions, absent good cause), Artnsen is now prevented from properly exhausting these claims as well as the remaining "new claims" that he never attempted to raise in the state courts.

　　　3.　Procedural Bar

In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An independent and adequate state rule must be one that is firmly established and was regularly and consistently followed by the state courts at the time that the claim should have been raised. *See Calderon v. U.S. Dist. Court (Hayes)*, 103 F.3d 72, 75 (9th Cir. 1996), *cert. denied*, 521 U.S. 1129 (1997).

The Ninth Circuit has already determined that RCW 10.73.090, the time-related

REPORT AND RECOMMENDATION
Page - 13

procedural statute, provides an independent and adequate state ground to bar federal review. *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004), citing *Shumway v. Payne*, 223 F.3d 982, 989 (9th Cir. 2000).   Accordingly, absent a showing of cause and prejudice or actual innocence, all of Arntsen's unexhausted claims are now procedurally barred from federal habeas review.  *See Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994)( *citing Coleman v. Thompson*, 501 U.S. at 750).

Here, petitioner Arntsen does not argue cause and actual prejudice as a basis for excusing his procedural default.  Rather, he contends that he can make the requisite showing of actual innocence to have any claims that might otherwise be procedurally barred, reviewed and decided on the merits.  Dkt. #60 at 30.

C.   <u>ACTUAL INNOCENCE</u>

The heart of this writ is centered around Petitioner's claim of actual innocence.  In order to present otherwise procedurally barred claims to a federal habeas court, a petitioner must come forward with sufficient proof of his actual innocence to bring him within "the narrow class of cases . . . implicating a fundamental miscarriage of justice." *Schlup v. Delo*, 513 U.S. 298, 314-15 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting *McClesky v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991)).  A fundamental miscarriage of justice exists in the "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McClesky*, 499 U.S. at 494, 111 S.Ct. 1454.

Actual innocence can be shown when a petitioner "presents evidence of innocence strong enough that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Sistrunk v. Armenakis*, 269 F.3d 669 (9th Cir. 2002) (en ban), quoting *Schlup*, 513 U.S. at 316, 115 S.Ct. 851.  To be credible, [an actual innocence] claim requires petitioner to support his allegations of

REPORT AND RECOMMENDATION
Page - 14

constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial. *Schlup*, 513 U.S. at 324, 115, S.Ct. 851.  This evidence must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327, 115 S.Ct. 851.

Petitioner bears the burden of proof on this issue by a preponderance of the evidence. *Lorentsen v. Hood*, 223 F.3d 950, 954 (9th Cir. 2000), citing *Dejan v. United States*, 208 F.3d 682, 692 (8th Cir. 2000).  In assessing the adequacy of claims of actual innocence, the habeas court "must make its determination concerning the petitioner's innocence in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial." *Schlup*, 513 U.S. at 318 (quoting Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L.Rev. 142, 160 (1970)).

1. Evidence presented by Petitioner

As support for his actual innocence claim, Arntsen offers a declaration from his brother Ron admitting to shooting the victim.  In the declaration, signed on October 26, 1998, Ron states:

> 1.  My name is Ronald Arntsen.  I am 20 years of age.
>
> 2.  During April 1993, my brother Ricky Arntsen was arrested for the killing of Gregory Collier.  My brother Ricky should never have been arrested for this killing since I killed Gregory Collier.  In fact, Ricky was not present when I shot Mr. Collier and he was not in any way involved in the killing.
>
> 3.  I know that my brother is innocent of the killing and he should not have been charged with or convicted of any crime.  I am sorry that it has taken me so long to come forward and admit my involvement in the killing.  I am now prepared to testify in court that I killed Mr. Collier without the involvement of any other person.

REPORT AND RECOMMENDATION
Page - 15

1 | *See* Dkt. #68, Ex. 39 - Maybrown Decl., App. B. (Ronald Arntsen Decl.).

2 |     Along with this declaration, Arntsen also included the documents summarized below as

3 | corroborative evidence when he raised the actual innocence claim in his third PRP:

    a.    <u>Police reports and statements in Seattle Police Department Incident No. 93-175565</u>

    Two police reports, the first of which describes the arrest of suspects Ron, Cynthia, and Connie Arntsen several hours after the shooting when a police officer observed them in a vehicle matching the description of the vehicle involved in the shooting. Ron Arntsen, who was fifteen at the time, was booked into YSC for investigation of homicide and the women were investigated and released. Included with the report are conflicting statements from Ron and Cynthia Arntsen describing how and why they went to Seattle on April 22, 1993. In their statements, neither Ron nor Cynthia mentions being at the scene of or involved in the shooting.

    The second report, prepared the day after the shooting, indicates that Ron Arntsen came to the Seattle Police Department Homicide Office and turned himself in for the shooting. Included with this report is a statement form documenting that Ron's constitutional rights were explained to him. However, it does not contain any statement from Ron regarding details of the shooting.

    b.    <u>Statement of Kaunya Arntsen, dated December 4, 1983</u>

    Petitioner's sister Kaunya states that she witnessed the shooting on April 22, 1993, that she was familiar with the person who did the shooting, and she is aware of why the victim was shot. She further indicates that Ricky M. Arntsen was not the person who did the shooting. She states that when she was arrested, she told the officers she was there [at the shooting] and would not offer any other information.

    c.    <u>Statement of Kristine Arntsen, dated December 4, 1993</u>

    Kristine Arntsen states that she was with Ricky M. Arntsen the majority of the day of the shooting and "surely at the time of the shooting." She indicates that at the time, they were not in Seattle and so they could not have been at the scene of the shooting. She states that she was interviewed on September 21, 1993, by Petitioner's appointed counsel and was ordered to appear to testify on his behalf. Kristine indicates that she showed up on the date specified but was not called to the stand.

    d.    <u>Statement of Ronald Jackson, dated December 4, 1993</u>

    Ronald Jackson states that he can verify that Ricky M..Arntsen could not have been at the location of the shooting on April 22, 1993, at the time of the

REPORT AND RECOMMENDATION
Page - 16

shooting.  He indicates that he and Petitioner were at the same place at the same time.

e.   Report of Mark Tippins Reinitz, Ph.D., dated December 6, 1997

Dr. Reinitz, a professor in the Psychology Department at Boston University, indicates that his area of expertise is human memory and perception. His statement/report was prepared on the request of Petitioner Arntsen who "conveyed the general facts of the case to [him] via court documents and personal letter." Dr. Reinitz's statement outlines certain issues regarding eyewitness testimony that he found significant in this case.

*See* Dkt. #68, Ex. 39 - Maybrown Decl., Exs. A & C-F.

Additionally, Arntsen and his siblings Ron, Kaunya and Kristine testified at the hearing in King County Superior Court on the merits of this actual innocence claim. Dkt. #68, Ex. 43-45. Ron's testimony regarding the circumstances of the shooting is summarized below:

On April 22, he and his sister Kaunya planned to go to Seattle to purchase rock cocaine to sell. Dkt. 18, Ex. 43 at 12-13. They were picked up after school and driven to Seattle by their mother Cynthia, and Ricky [petitioner] was not with them. *Id.* at 14-15. While they were driving around the Central District, they pulled over to talk to a friend named "Woo," a heavyset, light-skinned, bald-headed, five nine to six one, African-American man. *Id.* at 16-17. The police were coming behind them as they were talking, so Woo directed them to go around the block to the other side of the apartments. *Id.* at 18. After they drove around the building, Ron and Kaunya got out, and they were standing around in a parking lot with Woo and another guy, Low Rider (the "victim") who was introduced to Ron by Woo. Low Rider allegedly sold Ron some fake rock cocaine[5]. The shooting occurred when Ron asked Low Rider several times to give his money back, but Low Rider said, "You ain't getting shit." "I'm going to smoke you and your whole family and I'll start with you." Ron indicates that Low Rider reached into his coat, and Ron then pulled out his gun[6] and shot him probably five times when Low Rider kept "flinching" at him and "coming at him" and "started pulling his hand out [of his coat]. *Id.* at 20-22. After the shooting, Ron, Kaunya, and Woo got in the car, and they left the scene. *Id.* at 22-23.

_____

[5]Both Ron and Kaunya testified they discovered the drugs were fake after a woman walked up and asked if anyone could sell her a twenty piece of rock cocaine, Ron gave her one out of his bag, she tasted it, the she returned it and said it was not real. Dkt. 68, Ex. 43 at 21; Ex. 44 at 11.

[6]Ron testified that he brought a .380 gun to Seattle with him for protection. *Id.* at 19.

REPORT AND RECOMMENDATION
Page - 17

Ron said that he gave the gun to Woo and told him to get rid of it. *Id.* at 24. Ron and his mother and sister were arrested after they arrived back at the Embassy Suites in Bellevue. *Id.* at 24-25.

Ron also testified that he gave a statement to the police, but he did not tell them that he was involved in the shooting because he did not want to get into trouble. *Id.* at 26. He states that the police showed him a picture of Ricky, asked whether Ron knew him and asked, "He did it, huh?" To which, Ron said "No." *Id.* at 27. They were later released and Ricky was in custody. On direct exam, Ron testified that he turned himself in the next day and told police that he was the one who shot Low Rider. *Id.* at 28. He states that he did not give the police a written statement that day because he wanted his attorney present. *Id.* at 29. On cross-exam, Ron testified that he did not give a statement to Detective O'Leary that he killed Low Rider; rather, Ron told him he was there for the shooting. *Id. at 54.* Ron was held in juvenile detention for a week or two. *Id.* He indicates that after he got out of juvenile detention, he told the public defenders who represented Arntsen at trial, Hunter John and Anne Daly, that he was the real killer and his brother was being held for a murder he did not commit. *Id.* at 55. After his brother was convicted, the next time Ron told someone that he was the real killer was probably in 1998 when he told attorney Todd Maybrown. *Id.* at 56.

Kaunya Arntsen's testimony essentially corroborated Ron's description of the circumstances of the shooting. Dkt. #68, Ex. 44 at 4-84. She testified that she did not make any statements to the police after she was arrested. *Id.* at 14. Additionally, she testified that she and her little brother Ronnie decided to tell the truth about what happened, so they went to the police station the next day. *Id.* at 15. However, she indicated that she does not remember telling anyone anything. *Id.* Kristina Arntsen testified consistently with her written statement. Dkt. #68, Ex. 43 at 66-117. Petitioner Arntsen, who had been in custody seven years at the time of the hearing, testified that he did not testify at trial because his attorneys would not allow him to do so. Dkt. #68, Ex. 44 at 94-95. He also testified that he did not know Gregory Collier [Low Rider], did not shoot him on April 22, 1993, and was not present in Seattle at any time on

that date. *Id.* at 95.  He further testified that he was at the Embassy Suites Hotel in Bellevue at 5:30 p.m. [the time of the shooting] on April 22, and that he did not see Ronnie or Kaunya on that day. *Id.* at 96-97.

Relying on this evidence, Petitioner presents lengthy arguments that the police file, the trial record, and the facts of the case serve to show that he is not the person who shot the victim. Additionally, he argues that he has consistently maintained his innocence and  that Ron Arntsen has admitted to the shooting and testified to events surrounding the shooting as only one could who was there.  He also notes that Ron's admission and testimony is corroborated by his sister Kaunya Arntsen, who was an eyewitness to the shooting.   He contends that it is not likely that Ron Arntsen would falsely confess knowing that he was exposing himself to criminal prosecution and punishment.  Moreover, Arntsen argues that had a jury been presented his testimony and the testimony of Kristine Arntsen, and Reggy Arntsen, they may have been persuaded that Petitioner was in Bellevue at the hotel at the time the shooting took place.  Arntsen claims that all the facts evidence and testimony suggest that there is a substantial likelihood of mistaken identity and that he did not shoot the victim. Thus, he argues that no juror acting reasonably and who considered fairly all the evidence presented, would have voted to find him guilty beyond a reasonable doubt.

Respondent contends that Petitioner is not able to show that he is actually innocent.   He argues that this Court should hold that there is no probative value in Ronald Arntsen's declaration because of the timing of its submission and the lack of credibility of all the other Arntsens, except Petitioner who testified at the hearing on the merits in superior court. Respondent also argues that the Court should hold that Ron Arntsen's declaration and the testimony of family member is not new evidence because it was available at trial and could have been discovered earlier.

2. Legal Standard for New Evidence

REPORT AND RECOMMENDATION
Page - 19

A habeas petitioner may pass *Schlup's* test by offering "newly presented" evidence of actual innocence. *See Griffin v. Johnson*, 350 F.3d 956, 962-63 (9th Cir. 2003).[7]  Because Ron Arntsen's declaration and testimony, as well as the testimony of petitioner Arntsen and his other family members were not presented to the trial court, I conclude that it constitutes "new . . . evidence . . . that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. Therefore, the Court's focus now shifts to the "reliability" of this evidence and whether "it is more likely than not that no reasonable juror would have convicted [Arntsen] in light of this new evidence." *Id.* at 327, 115 S.Ct. 851.

　　　3.  Reliability of the New Evidence

　　　Under the Antiterrorism and Effective Death Penalty Act (AEDPA), facts determined by a state court are presumed correct unless rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).   In this case, Arntsen was able to fully develop the factual basis of his actual innocence claim in the state court hearing on the merits before the Hon. Ron Kessler of King County Superior Court.  Judge Kessler made both oral and written findings of fact. *See* Dkt. #68, Ex. 45 at 131; Ex. 47 at 1, Findings of Facts and Conclusions of Law Dismissing Petitioner's Personal Restraint Petition.

　　　Specifically, Judge Kessler found that Ron Arntsen did not persuade the court by a preponderance that he was shooting anybody in self defense and did not persuade the court that he was the shooter at all.  Dkt. 68, Ex. 47 at 1.  Likewise, Judge Kessler found that alibi witness Christine (sp.) Arntsen was not credible because the court did not believe that someone with her

---

[7]A habeas petitioner need not produce "newly discovered" evidence to meet the *Schlup* test.

REPORT AND RECOMMENDATION
Page - 20

demeanor and assuredness would have been so reticent or that she would simply agreed with defense counsel when they refused to call her as a witness. *Id.* at 1-2.

Arntsen contends that even if the court did not believe Ron shot the victim in self defense, that does not mean he was not the shooter. He attempts to rebut the state court's determination regarding Ron's credibility, by pointing out the fact that he (Arntsen) weighed 320 pounds at the time of his arrest, and that prior to the trial, none of the state's witnesses described the shooter as weighing 300 or 320 pounds when they were initially questioned by the police or when they drafted their reports during the initial stages of the shooting investigation. However, the record reflects that during closing arguments, when counsel referred to the range of the witnesses' estimates of the shooting suspect's weight, Judge Kessler clearly commented that "I think everybody could agree 320 pounds is a huge human being, especially when you're over six feet tall, compared to somebody who is 5-7 or 5-8 and 170 or 180, as his younger brother was at that time." Dkt. 68, Ex. 47 at 102-103. In light of this comment and the evidence in the record from witnesses who consistently described the shooter as a "heavy" or "heavy set," I conclude that Petitioner has failed to present clear and convincing evidence that rebuts Judge Kessler's finding– that Ron Arntsen's testimony was not credible.

Moreover, in *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843 (1983), the Supreme Court noted that 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them. Here Judge Kessler based his finding on Kristina Arntsen's credibility on his observations of her "demeanor and assuredness." Although, Arntsen attempts to rebut this credibility determination by offering his unsupported perceptions regarding the common beliefs of defendants and laypersons regarding attorneys and the courtroom setting, his perceptions do not constitute evidence. He also points to Kristina's alleged lack of awareness that she could tell

REPORT AND RECOMMENDATION
Page - 21

the judge she wanted to testify, and he argues that her testimony was corroborated by his testimony at the hearing and by Reggie Arntsen's video deposition.  However, since Judge Kessler found only petitioner Arntsen's testimony to be credible, his testimony alone would not constitute clear and convincing evidence of actual innocence.

       4.    <u>Likelihood of Conviction</u>

Arntsen argues that the newly presented evidence : a) points out inadequacies in the prosecution's evidence; b) demonstrates how Ron Arntsen's confession and self-inculpating testimony that he was the shooter, and the corroborating testimony of Kaunya Arntsen fit firmly into the facts of the case; and c) provides him with an alibi.  However, giving deference to the state court's determination that Arntsen was the only credible witness who testified at the hearing on the merits, the new evidence does not fundamentally call into question the reliability of Arntsen's conviction.  If the jury had been presented with Ron's Arntsen's declaration and testimony that he shot the victim, Kaunya Arntsen's corroborating testimony,  and the testimony of Arntsen's alibi witnesses, the jury still would have been likely to convict him given that three witnesses (Officer Ferreira, Veola Lester, and Tammy Walberg) made both out-of-court and in-court identifications of Arntsen in connection with the shooting.

Officer Ferreira testified that on the day of the shooting, Tammy Walberg gave him a description of who she believed was the shooter and he broadcast the description of a 300 pound man.  He stated that based on her description, he believed it was the same person he had seen less than ten minutes earlier on the sidewalk before the shooting.   Dkt. 18, Ex. 31 at 165-66.  He also testified that later when detectives asked him to look at a group of photos to see if he recognized anyone, he recognized the face on the third photo as the face of the 300 pound man he had seen earlier by the red Toyota.  Officer Ferreira, then made his in-court identification of Arntsen as the person in the photo.  *Id.*  at 172.  He testified that although the hair was different,

the face in the photo was exactly the same as how the person looked on April 22.  He further indicated that although he had initially described the man as having a shaved head,[8] he concentrated on the face and was able to pick the photo immediately.  *Id.*  Officer Ferreira was cross-examined regarding the fact that he had not mentioned that the person weighed 300 pounds[9] when he prepared his incident report and that his report referred to the man as having a "freshly shaved head." *Id.* at 176-178.

Veola Lester, an eyewitness to the shooting, testified that she saw the driver get out of the little red car.  She described him as being tall, kind of heavy set, light-skinned, with medium length hair.  Dkt. 18, Ex. 31 at 215.  She was also able to give the police an accurate description of damage to the red car and identify that the driver was drinking MD 20-20 kiwi fruit.  *Id.* at 203, 216.  In describing the shooting, she testified that the driver of the car, who had been talking with three other guys (including the victim) on the parking lot, finished his drink, tossed the bottle in the bushes, and then turned and shot the victim five times.  *Id.* at 223.  She testified that later, when the detectives showed her a photo montage and asked if she recognized anyone that had been there earlier during the shooting, it did not take her long to recognize someone. *Id.* at 241.  She also selected photo number three from the photo montage.  *Id.* at 242.  Moreover, she made an in-court identification of Arntsen as the guy she saw throw the wine bottle in the bushes.  *Id.* at 244.  She testified that Arntsen was heavier on April 22 than he was at trial.  Additionally, when she was shown Arntsen's booking photo from the night of his arrest, she identified him as the shooter, and testified that the photo accurately represented  how he

_____

[8]Petitioner Arntsen had hair in the booking photo that was taken at the time of  his arrest on the day of the shooting.  Dkt. 68, Ex. 52 at B1.

[9]In his report, Officer Ferriera described the man as a "heavy set" black male.  Dkt. 68, Ex. 1.

REPORT AND RECOMMENDATION
Page - 23

looked on the night he shot the victim.  *Id.* at 247.  On cross-examination, she estimated that the driver of the red car was been 24 to 27 years of age, which is within the Defendant's age range. *Id.* at 271.

Tammy Walberg described the man that she saw holding the gun as being a "light skinned and heavy set black man with a smirk on his face.  Dkt. 18, Ex. 31 at 360.  She also stated that he was tall.  *Id.*  at 364.  She testified that she was able to clearly see his face.  *Id.* at 365.  She further testified that she saw the same man who had the gun outside the courtroom while she was sitting on a bench and that he had the same smirk on his face when he walked past her as he did on the day she saw him with the gun.  *Id.* at 369.  She then made an in-court identification of defendant as that same man.  *Id.* at 368

None of these eyewitness descriptions of the shooter match that of Ron Arntsen, who by his own testimony weighed about 185 pounds and whose height was five-eight to five-nine in April 1993.  *See* Dkt. 68, Ex. 43 at 26.  Moreover, of all the witnesses who testified about who they observed on the parking lot just prior to the shooting, none of them referred to a black female (either Kaunya or the woman who allegedly brought crack from Ron and identified it as being fake) as being present.  Therefore, even if all the evidence Arntsen now proffers had been introduced at the trial, this Court is not convinced that "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327, 115 S.Ct. 851.  Based on these facts, I conclude that Arntsen has failed to present sufficient evidence of actual innocence to permit him to pass through the *Schlup* gateway and to argue the merits of his procedurally barred claims.

D.     EXHAUSTED CLAIMS

1.     Standard of Review

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

REPORT AND RECOMMENDATION
Page - 24

merits in state court unless the adjudication either: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state court. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a federal court may grant the writ if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided a case differently than the Supreme Court had on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal court may grant the writ if the state court identified the correct governing principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. *Id.* 413. Accordingly to the Ninth Circuit, an application of the law is unreasonable only if it is clearly erroneous. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000).

In addition, if a petitioner challenges the state court's determination of a factual issue, such determination shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.   Ineffective Assistance of Counsel - Subclaim (a)

As discussed earlier in section "B," Arntsen has only fully and fairly exhausted the claim that his trial counsel provided ineffective assistance in violation of the Sixth Amendment by bungling all of the identification issues in this case. Although Arntsen argues three subclaims under this issue (*See* Dkt. #60 at 114), he has properly exhausted only subclaim (a) that defense counsels' performance was deficient where they aborted the motion to suppress the identifications from the montage.

Here, Arntsen points out that defense counsel moved to suppress the identifications

arising from the photo montage on the basis that the montage itself and/or the procedures used in the presentation of the montage to the witnesses were suggestive.  He argues that although his counsel cross-examined the police officers with respect to the general identification procedures, counsel failed to test whether these procedures were implemented and whether they had a suggestive effect on the witnesses.  Instead, he argues that counsel inexplicably suspended questioning and asked to defer the motion until <u>after</u> each witness testified before the jury.  Accordingly, he argues that this conduct allowed the jury to hear and view testimony which was faulty, unreliable, and which was probably obtained through a violation of his constitutional rights.

In order to prove that counsel's assistance was constitutionally inadequate, a defendant must show that counsel's performance fell below an objective standard of reasonableness and prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Judicial scrutiny of ineffective assistance of counsel claims must be highly deferential, however, in order to eliminate "the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  The reasonableness of counsel's challenged conduct must be determined based on the facts of the particular case, viewed as of the time of counsel's decision.  *Strickland*, 466 U.S. at 690.  The analysis must start with a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance.  *Strickland*, 466 U.S. at 689-90.  The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component.  *Strickland,* 466 U.S. at 697.  Furthermore, if both components are to be considered, there is no prescribed order in which to address them.  *Id.*

Respondent argues that this claim should be dismissed on the merits because the state court's adjudication of the claim was not contrary to, or an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  In its unpublished

REPORT AND RECOMMENDATION
Page - 26

opinion, the Washington Court of Appeals concluded that under the particular circumstances of

this case, it found no ineffective assistance of trial counsel in electing to defer the court's

suppression ruling until identification witnesses had testified at trial. Dkt. 18, Ex. 2 at 6. The

court provided the following description of what occurred at the hearing:

> At the suppression hearing, the defense theory was that police detectives
> had asked witnesses to identify the person in the montage "most resembling the
> shooter" instead of asking them to identify the shooter if they saw his photograph
> in the montage, and that the montage itself was faulty based on skin tones and
> hair styles of the persons photographed. But police testified at the suppression
> hearing that they had asked the witnesses to identify the person involved in the
> shooting, if possible, from the photos displayed to them. Defense explained to the
> trial court that by waiting to hear from the identification witnesses themselves
> before asking the court to finally rule on the suppression motion, defense counsel
> would confirm or deny the police version of what the witnesses were asked when
> they were shown the photographic montage, and then ask the court to rule on the
> suppression motion based on the totality of the circumstances with respect to
> each identification witness.

*Id.* at 6-7. The court concluded that although none of the identification witnesses confirmed the

defense theory during their respective testimonies, the defense strategy of waiting to hear from

these witnesses was legitimate under these circumstances. *Id.* at 7. Further, the court held that

even if there was no reasonable tactical reason for the defense approach to the suppression

motion, counsel's approach could not be deemed ineffective unless the suppression motion

would have been granted if timely made. The court indicated that it had examined the photo

montage in light of Arntsen's contentions, and did not find it to be impermissibly suggestive.

Accordingly, the court concluded that a motion to suppress on this ground would have been

denied, and therefore counsel's failure to move to suppress on this ground could not support a

claim of ineffective assistance of counsel. *Id.* at 8.

The second prong of the *Strickland* test requires a showing of actual prejudice related to

counsel's performance. The petitioner must show that it is reasonably probable that, but for

counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at

REPORT AND RECOMMENDATION
Page - 27

497.  Here, the record supports the state court's conclusion that Petitioner was not prejudiced by trial counsel's decision to defer the suppression motion until after each identification witness testified in that the identification witnesses' testimony did not confirm the defense theory on what the police asked them when they presented  the photo montage.  Moreover, because the state court concluded that the photo montage was not impermissibly suggestive, it was unnecessary for the court to evaluate whether there was a substantial likelihood of irreparable misidentification.   Therefore, the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI.  CONCLUSION

For the foregoing reasons, this Court recommends that Petitioner Arntsen's federal habeas petition be DENIED and that this action be DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 25th day of February, 2005.


/s/ Monica J. Benton
MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 28